# THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY

## v.

## JOHN COLLINS.

1. EVIDENCE — *of a co-conspirator.* In an action against a railroad company to recover the value of a trunk and its contents alleged to have belonged to the plaintiff as a passenger, and lost by the company, the evidence tended to show that the trunk belonged to a third person, who took it away from the depot without the knowledge of the agent of the company, and then procured the plaintiff to bring suit for its recovery. The evidence tending thus to show a community of interest and design between the plaintiff and such third person, it was *held*, a letter written by the latter to a stranger to the transaction, going to show the conspiracy, was admissible in evidence against the plaintiff.

2. BAGGAGE — *what properly so considered.* A Chicago grocer, who went into the country in quest of butter, sought to recover of a railroad company the value of two revolvers, among other things, which he claimed were in his trunk as a part of his baggage, which was lost by the company: *Held*, with due regard to the habits and condition in life of the passenger, more than one revolver was not reasonably necessary for his personal use and protection.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of trover, brought by Collins against the railroad company, to recover for a trunk and its contents, alleged to have been delivered to the company as the baggage of the plaintiff, to be transported from Chicago to Walcott, in the State of Iowa.

The plaintiff testified in his own behalf, that on the 16th day of July, 1867, he received a check, which he exhibited, number 1,390, for his trunk, at the Chicago and Rock Island depot, in the city of Chicago, and that the trunk was checked to Walcott, Iowa. The witness stated that he had applied at the proper offices in Walcott and Chicago, for the trunk, but had

never received it.   He stated what the trunk contained ; among other articles, two revolvers, worth $25 each.

On cross-examination, the witness stated that he kept a grocery store in Chicago, and went to Walcott on the occasion mentioned, partly for his health, and to buy butter.   He stated further, that on arriving at Walcott, on the 17th of July, he got dinner in a saloon near the depot, and went to a boarding house kept there by Pat. Manyon, and stayed there all night, and the next day went to Davenport.   He did not know that he would know Manyon if he should see him.   He thought the agent at Walcott was a large, thick set man.   Witness stated that he did not know Thomas Duggan—never knew a man by that name in this country.

*F. W. Kefferstein* testified : He had been the station agent at Walcott for several years, but was absent on the seventeenth of July, the day the trunk arrived, his son being in charge of the depot.   He stated he had never seen the plaintiff until the day of the trial, and that he had never at any time whatever called upon witness for the trunk.   P. Manyon lived from a quarter to a half mile from the depot, and kept a kind of boarding house.

*James Jordon,* was baggage man on the train to Walcott on the seventeenth of July ; kept a list of checks used on that train ; the last time check number 1,390 was used was on that day ; he did not know what the check was attached to.

*John Kefferstein,* son of the station agent at Walcott, and in charge on the seventeenth of July, remembered about the lost trunk ; it was put off the morning train west.   It was a large chest, round topped, like sailors use, painted blue.   It was set on the platform, and, during his absence for ten minutes, it was stolen.   Witness never saw the plaintiff before the trial.   No one ever claimed the baggage that he knew of.

*Patrick Manyon* testified : That he lived at Walcott at the time referred to, and no one else lived there of the same name. He lived near the depot ; did not keep a boarding house, but worked on a farm near there.   Witness stated that he had

never seen the plaintiff before the trial; plaintiff did not stay at his house on the night of the seventeenth of July; witness was at home every night and would have seen the plaintiff if he had been there. Witness had a cousin named Thomas Duggan, who came to his home about that time, and stayed some time.

The witness here identified a letter produced, by the defendant, purporting to be in the handwriting of Thomas Duggan, and addressed to the witness, which letter was, and is as follows:

"CHICAGO, Ill.

"Dear Cousin:

"I would like to have your answer of the last letter, but you never sent me the answer. You will please answer this letter as quick as possible. Patt, please to tell anybody in Walcott that comes across you that a man of the name of Collins stoped in your house; them checks that I took from Walcott belong to my chest. Collins took them in hand; therefore, you act as I tell you, he intends to make money on it; all that you got to say is, that a man of the name of Collins stoped in your house harvest months, so good day. From your affectionate cousin;

"THOMAS DUGGAN."

"Tell them it was about the 16th or 20th of July; be cautious who you will talk about the subject, and without you asked never mention anything about it. Collins and me intends to make money on it. Direct your letter to 257 North Market street to John Collins. Write back soon as ever you get this letter."

The defendant offered said letter in evidence; plaintiff objected to its being received; the court sustained said objection, and refused to allow the letter to be read. The defendant excepted.

1870.]    CHI., ROCK I. & PAC. R. R. CO. *v.* COLLINS.    215

Statement of the case.   Opinion of the Court.

*Mary Manyon* testified: My name is Mary Manyon. I lived in Walcott until the fall of 1867. I knew Thomas Duggan when he was a baby, but did not see him for about twenty years until he came to my son's house in July, 1867, about the middle; he stayed about six weeks; he had a sailor chest, painted a bluish color, with rope handles. I saw a leather string with, I think, two checks on; the children were playing with them. I told Thomas Duggan he should take those checks to the railroad, to the agent; he said he had no business to. I do not know what became of them; did not see them after he left; they must have been around if he did not take them away. I never have seen or heard of John Collins.

*Mary Manyon,* the younger, testified: My name is Mary Manyon, the wife of Patrick Manyon. I lived in July, 1867, in Walcott. I know Thomas Duggan, he is a cousin of my husband. I did not know him until he came to our house in July, 1867; I saw him at that time, he stayed about six weeks, working about the neighborhood; he came to my husband's house about the middle of July, 1867. He brought a sailor chest with handles on it, painted a dark bluish lead color, nothing else. He had a check (two) and a leather strap; the children played with same. He must have taken them away or we would have seen them again. I never knew John Collins, and he was never at our house.

A verdict was returned for the plaintiff for $403. The defendants appealed.

Mr. GEORGE C. CAMPBELL, for the appellants.

Messrs. RUNYAN & AVERY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The first point made in this case is, upon the exclusion of the following letter, addressed to Patrick Manyon, when offered in evidence in the court below:

"Chicago, Ill.

"*Dear Cousin:*

"I would like to have your answer of the last letter, but you never sent me the answer. You will please answer this letter as quick as possible. Patt, please to tell anybody in Walcott that comes across you that a man of the name of Collins stoped in your house; them checks that I took from Walcott belonged to my chest. Collins took them in hand, therefore, you act as I tell you; he intends to make money on it; all that you got to say is, that a man of the name of Collins stoped in your house harvest months, so good day.

"From your affectionate cousin,

"Thomas Duggan."

"Tell them it was about the 16th or 20th of July; be cautious who you will talk about the subject, and without you asked never mention any thing about it. Collins and me intends to make money on it. Direct your letter to 257 North Market street to John Collins. Write back soon as ever you get this letter."

The letter was proved to be in the handwriting of Thomas Duggan. The evidence in the case tended strongly to show, that John Collins was only a nominal party, and that the real party in interest was Thomas Duggan; that Collins had testified falsely as to three material facts—as to the description of the trunk, as to calling for it at Walcott, and as to stopping at Patrick Manyon's house. Instead of Collins calling for the trunk at Walcott on the seventeenth of July, and staying at Manyon's the night of that day, as he testified, there was evidence that he never called for the trunk, and never was at Manyon's; but that Duggan was the man who took and carried away the trunk on that day from the platform of the station house at Walcott, in the absence of the station agent, with the check attached to the trunk, and brought it to Manyon's house, where he remained several weeks, having with him there two

checks, the strap check and the loose check which is delivered to the owner of the baggage when the strap check is attached to it.

There was sufficient evidence of a community of interest and design between Collins and Duggan to have rendered this letter of Duggan admissible in evidence as against Collins, to show a conspiracy between them to defraud the railroad company.

The fact of Duggan having in his possession at Walcott, the check, especially connects the parties together, as being in concert and acting in co-operation.

Another objection taken is, that among the contents of the trunk, as testified to, were two revolvers, and that a recovery was had for them, as baggage, $25 for each.

A common carrier of passengers is responsible for the baggage of a passenger.

But what shall be deemed baggage becomes, under some circumstances, a question of doubt. In *Woods* v. *Devin*, 13 Ill. 746, this court said that the term "baggage" "includes such articles of necessity and convenience as are usually carried by passengers for their personal use, comfort, instruction, amusement or protection;" and that regard might be had to the habits and condition in life of the passenger.

The passenger, in this case, was a Chicago grocer, who had gone into the country, as he says, in quest of butter. His occupation or circumstances did not require that he should be furnished with any unusual store of deadly weapons, and we think he might have got along with one revolver. He should not have been allowed more than one revolver, as being reasonably necessary for his personal use or protection.

For error in both the above mentioned respects, the judgment is reversed and the cause remanded.

*Judgment reversed.*