NEW YORK PRACTICE REPORTS. 535

Fraloff agt. N. Y. Central and Hudson River R. R. Co.

# UNITED STATES CIRCUIT COURT.

## OLGA DE MALUTA FRALOFF agt. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

*Common carrier's responsibility — what constitutes baggage.*

The limit of a public carrier's responsibility is as uncertain when left to be ascertained as a question of law by the court, as when left to the inquiry of a jury, because, in the nature of things, it is susceptible of no precise or definite rule what shall constitute the quantity or the value of the articles which may be deemed proper or useful for the purposes of the traveler.

But whenever the article in controversy is or may be wearing apparel, a question arises for the determination of the jury as to whether, upon the facts in the particular case, it was such as the traveler was entitled to carry as baggage, it follows that the finding of the jury, when sustained by credible testimony, must be conclusive.

*Southern District of New York, April 1, 1875.*

MOTION upon a case for a new trial. Action by passenger to recover for baggage lost while in charge of defendant. At circuit the jury rendered a verdict for plaintiff for $10,000.

*James W. Gerard,* solicitor for plaintiff.

*Elliott W. Shepard,* for defendant.

WALLACE, *J.* — The facts upon which the verdict of the jury is predicated are so unusual, and the amount of the recovery, in view of the nature of the action, is so exceptional, that this motion deserves, and has received, careful consideration; but, notwithstanding the very elaborate and able argu-

ment of defendant's counsel, and my own inclination to dissent from the conclusions of the jury upon one of the vital questions of fact, I am convinced that the case presented is not within the rules which authorize a verdict to be set aside as contrary to evidence.

Credible testimony was given which authorized the jury to find the following facts: That the plaintiff was a Russian lady of high rank and large estates, who for some time prior to coming to the United States had been traveling in Europe, spending her time mainly in its principal capitals; that, partly for health and partly for pleasure, in September, 1869, she determined to visit the United States, and left England under the escort of one Webber as a traveling companion, and came to New York city.

That, while in England, her baggage comprised twelve trunks; of them she brought here four large and two small ones, containing wearing apparel, for her own use, of great variety and quantity, and of very expensive quality; that, included in her wearing apparel, was a large quantity of rare and valuable laces, which she had been accustomed to wear occasionally at home and during her travels in Europe, and which she valued at $200,000.

That she contemplated extensive travels in this country, and brought with her about $15,000 for her expenses, but had no fixed plans as to the duration or details of her travels.

That, after staying several weeks in New York city, she commenced her travels here, and started for Chicago, intending to visit several places on the way, designing not to return to New York, but to decide after arriving at Chicago where she would go, contemplating in a general way going to New Orleans, Havana, California, and possibly Rio Janeiro, or to some of these places.

That she carried with her from New York one large trunk, a small trunk, a hat-box, four satchels, a bag containing jewelry, and a cage of birds; took with her the laces in question, which were packed in the large trunk; this contained several

Fraloff agt. N. Y. Central and Hudson River R. R. Co.

trays, the laces being in the fifth one from the top. Webber accompanied her. That they stopped at the Delavan House, Albany, for a day or two, and the large trunk was allowed to remain during that time in the baggage of the hotel, locked with other baggage; that Webber went to the trunk once or twice by plaintiff's request and procured from it articles which she wanted; that just before it was taken from the hotel to the defendant's depot, by the hotel porter, Webber returned these articles to the trunk; that he then saw the package in which the laces had been folded by plaintiff when she packed her trunks; that she locked the trunk, and soon after it was delivered by the porter to the defendant's baggage agent, checked for Niagara Falls, whither plaintiff and Webber went by the same train as did the baggage; that the trunk was in good condition when delivered to defendant's agent; that when it arrived at Niagara the locks were broken, the contents disturbed, and plaintiff refused to receive it until it was examined to ascertain if its contents were safe; that upon examination it appeared that the laces were missing, although nothing else had been taken; that articles of great value were necessarily exposed to view before the laces could have been abstracted from the trunk.

As to the value of the laces the jury were authorized to find a verdict for a very small sum or for $62,000; some of the laces were collars and handkerchiefs and others were flounces, corsages and dress trimming of various kinds.

Although a large amount of testimony was elicited on the part of the defendant tending to contradict many of these facts, and upon some of them strongly discrediting the plaintiff's case, I am constrained to hold that there was sufficient evidence to authorize the jury to find them substantially as above stated.

Among other things, the jury were instructed that they were to decide, as a question of fact, under the rules defined by the court, whether or not the laces in question were baggage; and in this connection the court charged as follows:

Fraloff agt. N. Y. Central and Hudson River R. R. Co.

"The responsibility of a carrier cannot be maintained to the extent of making him responsible for such unusual articles as the exceptional habits, fancies or the idiosyncrasies of some particular individual may prompt that individual to carry. That liability is limited to responsibility for such articles as it is customary or reasonable for travelers of the same class or tastes in general to take with them for such journeys as the one which is the subject of inquiry." They were also instructed that they could find a portion of the laces to have been reasonable baggage and the remainder not.

I have summarized these facts and referred to the instructions mentioned, for the purpose of presenting satisfactorily the salient features of the case in regard to the question which has impressed me as the most serious one, viz., whether the jury could properly find that the property for which plaintiff has obtained a verdict was reasonable and ordinary baggage.

The jury must have found that laces of the value of $10,000, carried by a traveler with a large assortment of other articles of apparel for personal use, are reasonable and ordinary baggage, for the loss of which a carrier to whom they have been delivered without notice of their value is responsible. On first impression the statement of this conclusion raises a somewhat violent presumption against the correctness of the verdict. No precedent for a recovery so large has been found, and if it is sustained it is difficult to ascertain where the limit of a carrier's liability exists.

Nevertheless, if the question was properly left to the jury to decide as one of fact, the value of the articles was peculiarly for their consideration, and abundant testimony was before them to sustain the conclusion they reached. The difficulty in this case lies in the character of the articles for the loss of which the action was brought. They were claimed to be a portion of her wearing apparel. If they were such, within all the cases they were baggage, unless they were so valuable and rare as to exclude them from that category. What is wearing apparel, must necessarily be a question of fact.

What is reasonable and customary wearing apparel to be carried by a traveler upon a particular journey, must also be a question of fact. I know of no case where this has been held to be a question of law. The conflict in the authorities arises when we pass beyond these articles to inquire what other property is baggage. By some of these authorities it · is held that the broad question is one for the jury to determine, both as to the character and value, depending upon the tastes and habits of the traveler, his pecuniary circumstances, position in society, and the conveniences and necessities of the particular journey, and that their decision cannot be disturbed (*Rawson* agt. *Penn. R. R. Co.*, 2 *Abb.* [*N. S.*], 220 ; 3 *Barr*, 451), while by others it is held to be one of law for the court, and in these we find an irreconcilable conflict in its determination. Thus money for traveling expenses has been excluded (*Grant* agt. *Newton, E. D. Smith*, 95) ; and allowed (30 *N. Y.*, 594) ; jewelry excluded (2 *Bos.*, 589 ; 5 *Blatch.*, 538) ; and allowed (6 *Ohio*, 358 ; 4 *E. D. Smith*, 181) ; pistols excluded (56 *Ill.*, 22) ; and guns allowed (4 *E. D. Smith*, 453) ; manuscripts excluded (12 *Wall.*, 262) ; and allowed (6 *Blatch.*, 64.)

An examination of these cases justifies the remark that the limit of the carrier's responsibility seems as uncertain when left to be ascertained as a question of law by the court as when left to the inquiry of a jury. Holding as I do, that whenever the article in controversy is or may be wearing apparel, a question arises for the determination of the jury as to whether, upon the facts in the particular case, it was such as the traveler was entitled to carry as baggage, it follows that the finding of the jury when sustained by credible testimony must be conclusive.

If the court can set aside the verdict because it appears that the property was of greater value than the judge deems it reasonable that a traveler should carry, the question is no longer one of fact for the jury, but one of law for the court. If it is to be decided as matter of law, what standard of value is to be adopted ? Illustrated by the present case, when the

jury have found that the value of plaintiff's property was $10,000, or that such of it is under the circumstances she was entitled to carry was of that value, is it to be said it must be set aside, whereas, if it had been $1,000 or $3,000 the law would sanction the recovery? If so, it is the duty of the court, instead of instructing the jury that they are to determine what in the particular case is reasonable and customary baggage, to instruct them that the value or amount must not exceed some arbitrary limit defined by the court. To this proposition I cannot assent. If carried to its logical conclusion, it would abrogate the functions of the jury with reference to questions of this class.

On the other hand, if the views I have expressed are a correct exposition of the law, the carrier is exposed to the hazards of most onerous responsibilities. In this case the verdict might have been for $62,000, and it could not have been said that the verdict was contrary to the evidence as to the value of the property lost. It would be difficult to conceive that any facts would justify such a recovery for loss of baggage. Undoubtedly the case would be rare where such a verdict would not indicate prejudice, partiality or misconception on the part of the jury; and in such case, under its general power over verdicts, the court could set it aside. But had it been for that sum here, I am not prepared to say that it could not be sustained, in view of the extraordinary features of the case; as said by the supreme court of Pennsylvania: "It is not obvious in what manner the court can restrict the quantity or value of the articles that may be deemed proper or useful for the purposes of the traveler; because in the nature of things it is susceptible of no precise or definite rule; and when there is an attempt to abuse the privilege the court must rely upon the intelligence and integrity of the jury to apply a corrective." If carriers are unwilling to assume the liabilities which they may incur if this rule is adopted by the courts, they must resort to such regulations in regard to the

Fraloff agt. N. Y. Central and Hudson River R. R. Co.

transportation of baggage as are sanctioned by law, or appeal to legislation for protection.

I have not deemed it necessary to refer to any other of the many grounds upon which it is urged a new trial should be granted. I entertain no doubt that upon the other questions of fact there was sufficient evidence to justify the conclusions of the jury.

As to the rulings of the court upon the trial those of importance were quite maturely considered, and upon examination meet my approval now. The novelty and importance of the question involved render the case one eminently fit for the consideration of a higher tribunal, and to its consideration these questions should be remitted.

The motion for a new trial is accordingly denied.