## William Burton, Appellant, v. Drake Hotel Company, Appellee.

### Gen. No. 29,885.

1. INNS, RESTAURANTS AND LODGING HOUSES—*when relation of innkeeper and guest established.* Plaintiff became a guest at defendant's hotel so as to charge it with liability as an innkeeper for his baggage where he entered the hotel and was met by one of defendant's employees to whom he delivered his hand bags and received checks therefor and then went into the main dining room where he had lunch for which he paid.

2. INNS, RESTAURANTS AND LODGING HOUSES—*liability of innkeeper for loss of guest's baggage.* The common-law liability of an innkeeper is not modified by the provisions of the Innkeeper's Act when loss of baggage occurs through the negligence of the innkeeper or his servants.

3. INNS, RESTAURANTS AND LODGING HOUSES—*when prima facie case of negligent loss of guest's baggage shown.* Proof that duly authorized servants of an innkeeper received the baggage of a guest and issued a check therefor and that the guest's demand for the baggage upon presentation of the check was not complied with, makes out a prima facie case of negligence against the innkeeper.

4. INNS, RESTAURANTS AND LODGING HOUSES—*failure of guest to give innkeeper instructions as to checked baggage as negligence.* A guest at a hotel, upon surrendering his baggage to the authorized employees of the hotel, was not negligent in not giving any instructions as to what to do with it.

5. INNS, RESTAURANTS AND LODGING HOUSES—*failure of guest to disclose value of baggage as negligence.* A guest was not negligent, upon surrendering his hand bags to the authorized employees of a hotel, in not notifying anyone that the bags contained jewelry or articles of special or unusual value where the articles were not other than might appear to be necessary and convenient for guests of plaintiff's financial standing, the hotel being accustomed to provide for such guests.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. BERNARD P. BARASA, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed May 11, 1925.

McCORMICK, KIRKLAND, PATTERSON & FLEMING, for appellant.

HARMON, GEORGE & GILBERT, for appellee; CALVIN M. GEORGE, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The defendant in this case is an innkeeper and at the time of the transaction in question (April 14, 1920) operated the Blackstone Hotel, located at the corner of Seventh street and Michigan avenue in Chicago.

It cost about three million dollars to build and furnish this hotel, which offered unusual accommodations to the traveling public. The charge for its rooms varied from $4 to $16 a day, and in connection with the hotel and as a part of the hotel business it conducted three restaurants.

The plaintiff was a resident of New York, and at this particular time was returning by train from a visit to California. He was accompanied by a friend, Mr. Lorillard. The evidence indicates that plaintiff was a man of considerable means, being one of two brothers who inherited an estate of about nine million dollars.

On plaintiff's arrival in Chicago he and his friend took a taxicab and were driven to the defendant hotel. Plaintiff had been in Chicago on prior occasions, when he had been a guest at this hotel. He, however, states that at this particular time he was induced to go there by the suggestion of Mr. Lorillard that they should "go to the Blackstone and get a room where we could clean up after the trip."

Plaintiff had two traveling bags with him, a large patent leather suit case and a dull leather grip. Upon arrival they were met by one of defendant's servants, named Jennings, to whom the bags were delivered. These bags were not placed in the regular check room but outside that inclosure in the hotel lobby. Jennings then delivered a check for the baggage to plaintiff, who was standing in the lobby. Plaintiff then gave his hat and coat to another employee of defendant and went into the main dining room, where he had lunch, for which he paid. After lunch he handed the check which he had received to a boy and told him to bring the bags to a taxicab. Twenty minutes thereafter the boy came to the taxicab and said he could not find the bags. Plaintiff then went into the hotel to search for the baggage. He looked first in the check room and found that the whole aisle between the check room and the elevators was crowded with bags that had been checked. He reported his loss to the manager and gave to him a description and list of the contents of the bags.

In the evening plaintiff went back to the hotel for dinner and again inquired about the baggage, but it had not been discovered.

Plaintiff placed a value of more than $2,000 on the bags and contents, which consisted in part of a Sulka silk crepe bathrobe, for which he paid $300; a set of pearl and diamond cuff links valued at $400; five monogrammed Scotch linen handkerchiefs which cost $5 apiece; and a set of jewel jade and gold cuff links

inherited from his father, which he says were worth anywhere from $150 to $2,000 apiece.

Plaintiff was accustomed to wear the kind of clothing contained in the bags and suit cases, and he was accustomed to travel about the country and to stop at hotels in different cities. He says he went to the Blackstone Hotel on this particular trip because it was represented to him to be the best hotel in Chicago. He had on prior occasions given lunch and dinner parties at the Blackstone, and had taken meals there on every occasion when he visited the city.

The defendant hotel was provided with a vault in which valuables might be stored. Cards were placed in every room in the hotel giving notice of the existence of this vault, but there is no evidence that plaintiff had actual notice of its existence. There was a check room in the hotel for the purpose of taking care of all baggage.

The evidence shows without contradiction that the defendant investigated the character and general reputation of all its employees before hiring them. It employed a chief of police, whose duty it was to size up the general conditions and "give the once-over to everybody that came in—to see what they were loitering around the hotel for."

The chief of police of the defendant company testified that he discovered a pair of silk pajamas which answered to the description that plaintiff gave him of a part of the contents of the bag. The pajamas were found in a room at 2128 South State street by one Carten, a sergeant of police of the City of Chicago. The sergeant was taken to the place where these pajamas were found by one Wagner, who on June 27, 1920, was arrested in the lobby of the Congress hotel on suspicion that he was a hotel burglar. There is no claim that any other part of the baggage delivered to defendant has ever been found.

The facts so appearing and the cause being tried by the court without a jury, the trial judge was of the

opinion that plaintiff could not recover, and a finding to that effect was entered and judgment rendered thereon.

The first matter in dispute is whether, on the evidence, plaintiff was a guest of the defendant hotel company at the time his baggage was lost. The question is important as determining the rule by which the liability of defendant must be determined. If plaintiff was a guest, then defendant's liability, if any, is that of an innkeeper. If he was not a guest, then the liability, if any, is that of a gratuitous bailee.

It appears the courts of this State have not thus far defined "a guest" within the meaning of the law applicable to innkeepers.

In 32 Corpus Juris, 533, cited by both parties, a guest is defined as "a transient person who resorts to and is received at an inn for the purpose of obtaining the accommodations which it purports to afford. * * *" That authority also says: "A person cannot become a guest of a hotel unless he procures some accommodations. However, the accommodation necessary to be procured by a person in order to constitute him a guest may consist of any form of entertainment or refreshment which the innkeeper publicly professes to serve; it is sufficient if he takes lodgings only, or food without lodgings. * * *"

The defendant cites *Gastenhofer v. Clair,* 10 Daly (N. Y.) 265, on this point. That was a case where the plaintiff (a resident of the City of New York) was invited by his uncle (a guest at the defendant's hotel in the same city) to dine with him at the hotel. Upon going to the hotel the plaintiff did not find his uncle, and after some search went into a dining room, where he had dinner. As he came out from dinner he met his uncle and was taken by him to dinner in another dining room. On going into this room the plaintiff left his overcoat on a chair near a rack in an outside room, where there was no attendant. The over-

coat was lost.   The dinner which plaintiff took was at first charged to him but subsequently to his uncle, who paid for it.

It was held that the relation of innkeeper and guest did not exist and that the defendant was not liable. The ground of that decision was that there must be at least two parties to every contract.   The court said that a person could not make himself a guest without the innkeeper's assent, and that assent could not be obtained by slipping into the dining room of a hotel and ordering a dinner of a waiter who had no discretion in the matter and who brought what was ordered, under the belief that the person served was in the dining room by permission of the innkeeper.

There is a very clear distinction between the facts of that case and those which appear here.   Here there is no claim that the servant of the hotel who received the plaintiff's baggage was without authority.   On the contrary, it affirmatively appears that he was employed for that very purpose and was acting in the line of his duties.

The Illinois cases seem to hold that when the baggage of a transient is received by the innkeeper and the transient thereafter accepts some service for which he pays, such transient will be considered a guest of the innkeeper from the time the baggage was received.   Thus, in *Williams v. Moore,* 69 Ill. App. 618, it was said:  "One who becomes the guest of a hotel, by giving his baggage checks into its possession, places the goods they represent in its custody, *infra hospitium,* so far as to make the innkeeper responsible for goods which, by means of the possession of such checks, his representative or agent receives, although the baggage be never brought within the walls, yards or outbuildings of the hotel."

In *Eden v. Drey,* 75 Ill. App. 102, the court said: "The relation of innkeeper and guest was established by the reception of the baggage."   In *Flint v. Illinois Hotel Co.,* 149 Ill. App. 404, the court said:   "The

relation of innkeeper and guest may be, and was in this case, established by the reception of the baggage by the innkeeper.''

The same view seems to prevail in other states. Thus in *Hill v. Memphis Hotel Co.*, 124 Tenn. 376, 136 S. W. 997, it appeared that the complainants were transients in Memphis, Tenn., and drove to defendant's hotel. Their baggage was brought into the hotel and deposited near the clerk's desk, but they did not register nor communicate any such intention to the clerk. Thereafter, they went to the dining room where they had supper and paid for it, and then waited at the hotel until they resumed their journey. When getting ready to leave for the train it was discovered that one of their traveling bags was gone. They sued the innkeeper and the court held that, on the facts as stated, the relationship of host and guest was established. The court said: ''The traveler receiving lodging without food, or food without lodging, or any other form of refreshment which the innkeeper publicly professes to serve in the usual and customary way in which travelers are entertained, thereby becomes a guest. 22 Cyc. 1075; 16 Am. & Eng. Enc. of Law (2nd ed.) 519: *Overstreet v. Moser*, 88 Mo. App. 72; *Walling v. Potter*, 35 Conn. 185.''

We have no doubt in the instant case upon the uncontradicted facts the relationship of innkeeper and guest was established between the plaintiff and the defendant.

Assuming this relationship to be established, the next question that arises is that of determining the nature of defendant's liability. On that point, the common-law rule as applied in this State is clearly set forth in *Johnson v. Richardson*, 17 Ill. 302. It was there said:

''The general doctrine deducible from the authorities, ancient and modern, is, that keepers of *public inns* are bound well and safely to keep the property of their guests accompanying them at the inn; and

in case such property is lost or injured the innkeeper can only absolve himself from liability by showing that the loss or injury occurred without any fault whatever on his part; or, by the fault of the guest, his companions, or servants; or, by superior force.''

That this rule, though harsh, has come down from remote antiquity and would seem to be quite necessary to the safety and security of the traveling public will appear from a review of the law which is well set forth in *McDaniels v. Robinson*, 26 Vt. 316.

The defendant contends, however, that this rule has been modified by the provisions of the Innkeepers' Act as set forth in sections 1 to 3 of chapter 71 of the Illinois statutes. [Cahill's St. ch. 71, ¶¶ 1-3.] That act has been construed in *Rockhill v. Congress Hotel Co.*, 237 Ill. 98, and other cases.

It appears from an examination of these cases that the modification of an innkeeper's common-law liability under the statute is very much limited by the provisos contained in sections 1 and 3 of the act. These in substance remove from the statute cases where the loss or injury sued for shall have occurred through the negligence of the hotel proprietor or that of his servants or employees.

In *Rockhill v. Congress Hotel Co., supra,* it was claimed that the liability of the innkeeper was limited by this act, and the court said: ''But the act did not apply in this case, for the reason that the loss occurred by the negligence of the porter or servants of the defendant, and the statute affords no protection against such loss.''

Section 1 of this act has been construed by this court in *Hall v. Hotel Sherman Company*, 236 Ill. App. 386. We there cited and discussed *Hardcastle v. Ryder*, 175 Ill. App. 430; *Gross v. Saratoga European Hotel & Restaurant Co.*, 176 Ill. App. 160; and *Busley v. Hotel Wisconsin Realty Co.*, 166 Wis. 294.

Of the Wisconsin case we said: ''It was expressly held in construing a similar statute that, where the

goods of a guest are lost through the negligence of the innkeeper, the limitation as to amount does not apply and the guest may recover the full amount of his loss." See also *Edwards House v. Davis,* 124 Miss. 485.

It would therefore seem that in a case where the loss results from the negligence of the innkeeper or his servants the statute is not applicable.

The controlling question in this case therefore is: Was the negligence of the defendant or its servants the cause of the loss of plaintiff's baggage?

It is not disputed that the defendant's duly authorized servant received the baggage and that a duly authorized servant issued to the plaintiff a check therefor, and that the check was presented and the return of the baggage demanded, which demand was not complied with. This makes out a prima facie case of negligence against the defendant, according to well-considered authorities in this and other states. *Johnson v. Richardson, supra; Rockhill v. Congress Hotel Co., supra; Geo. C. Bagley Elevator Co. v. American Exp. Co.,* 63 Minn. 142, 65 N. W. 264; *Burnell v. New York Cent. R. Co.,* 45 N. Y. 184; *Fairfax v. New York Cent. & H. River R. Co.,* 67 N. Y. 11.

A case of prima facie negligence thus being made out, it follows that the liability of defendant is not limited by the statute.

Under the common-law rule defendant is not liable to plaintiff if the loss was the result of plaintiff's own negligence, or if it could be shown that the loss occurred without any fault on the part of defendant, or that the loss occurred by the use of superior force. The burden of proof on these matters, however, is cast upon the defendant, and it must establish these affirmative defenses or some one of them in order to avoid liability. On the question of its own negligence, defendant cites *Miles v. International Hotel Co.,* 289 Ill. 320, and *Sanford v. Kimball,* 106 Me. 355. In the first of these cases the relationship of guest and inn-

keeper had ceased to exist; and, in the second, the suit was brought to recover damages for what was evidently either an unexplained accident or malicious injury which a horse belonging to plaintiff had sustained while in possession of defendant under a contract of bailment.   Neither case is applicable.

It is suggested by defendant that plaintiff was negligent with respect to the care bestowed on his own baggage.   It is said he gave no instructions to any one as to what to do with the bags.   Why should he? The defendant's servant, not the plaintiff, would best know how to take care of the baggage.   That was his particular business.

It is suggested that plaintiff was negligent in that he did not notify any one that the bags contained jewelry or articles of special or unusual value.   The evidence indicates, however, that the articles were not other than might appear to be necessary and convenient for guests of plaintiff's financial standing, and these were the kind of guests which this hotel was accustomed to provide for.   Plaintiff had a right to believe that the care exercised by the defendant would be commensurate with the value of the baggage. *Woods v. Devin,* 13 Ill. 746; *Davis v. Michigan Southern & Northern I. R. Co.,* 22 Ill. 278; *Parmelee v. Fischer,* 22 Ill. 212; *Chicago, R. I. & P. R. Co. v. Collins,* 56 Ill. 212; *Atwood v. Mohler,* 108 Ill. App. 416. We think, on the undisputed evidence, the plaintiff was entitled to recover, and for the errors of finding in favor of the defendant and entering judgment on the finding the judgment is reversed and the cause remanded.

*Reversed and remanded.*

McSURELY, P. J., and JOHNSTON, J., concur.