BUSLEY, Appellant, vs. HOTEL WISCONSIN REALTY COMPANY, Respondent.

*October 5—December 4, 1917.*

*Innkeepers: Liability for loss of jewelry: Theft or gross negligence: Statutes construed: Measure of damages: Evidence as to value.*

1. The common-law liability of an innkeeper for the loss of a guest's goods caused by the theft or gross negligence of such innkeeper or his servants is preserved by our statutes (Laws 1864, ch. 318; R. S. 1878, secs. 1725, 1726; Stats. 1913, secs. 1725, 1725a, 1726).
2. Sec. 1725, Stats. 1913, applies only to property (therein specified) whose bulk is small compared with its value, such as is usually placed in safes or vaults for safe keeping; while sec. 1726 deals with "baggage or other property" of guests, presumably kept in their rooms, and sec. 1725a deals with a like class of property kept elsewhere than in such rooms.
3. The limitation, by sec. 1726, Stats. 1913, of the innkeeper's liability to $10 "for each box, bundle or package and contents, so placed under his care," does not apply to a package of goods such as are mentioned in sec. 1725 (in this case a chamois bag containing jewelry); and in case of the loss of such a package, caused by the gross negligence of the innkeeper or his servants, the value of the goods is the true measure of damages.
4. Evidence in this case as to the value of a "pigeon-blood ruby ring" is *held* sufficiently definite and satisfactory to sustain a finding by the jury that such value was $2,500.

APPEAL from a judgment of the circuit court for Milwaukee county: MARTIN L. LUECK, Judge. *Modified and affirmed.*

Action to recover damages for money and jewelry deposited by plaintiff December 12, 1915, as a guest in defendant's

hotel and stipulated upon the trial to have been lost by it through the theft or gross negligence of one of its servants. The value of the money and property lost, exclusive of a ring claimed to be a pigeon-blood ruby, was stipulated to be $1,425. The jury by special verdict found (1) that the property of the plaintiff was deposited in the vault by the cashier after having been received by her; (2) that the value of the ruby ring was $2,500; and (3) that defendant, during the time plaintiff was a guest at its hotel, had not complied with the posting of notices required by sec. 1725, Stats. 1915. The court set aside the third finding and found that defendant had complied with the statutory requirement as to the posting of notices, and held that under the provisions of sec. 1725 defendant's liability was limited to $300. Judgment for that amount, with interest and costs, was entered in favor of plaintiff, and from such judgment she appealed.

For the appellant there was a brief by *Bottum, Bottum, Hudnall & Lecher,* attorneys, and *R. N. Van Doren,* of counsel, all of Milwaukee, and oral argument by *Mr. Van Doren* and *Mr. George B. Hudnall.*

For the respondent there was a brief by *Robinson & Saltzstein* of Milwaukee, and oral argument by *Nathaniel Robinson.*

The following opinion was filed October 23, 1917:

VINJE, J. The evidence sustains the court in finding that defendant had complied with the statutory requirement of sec. 1725, Stats. 1915, as to the posting of notices.

Since it was stipulated upon the trial that the loss occurred either through the theft or gross negligence of defendant's servants, the precise question for determination is, What is its liability for such loss? We need not and do not consider the extent of an innkeeper's liability for the loss of property delivered to him occurring without any negligence on his part.

Under the common law an innkeeper was answerable for all thefts from within and for the gross negligence of himself and his servants.    14 Ruling Case Law, 516, and cases cited. This rule was declared in *Jalie v. Cardinal,* 35 Wis. 118, and has not been departed from.    The court there uses this language:

"The innkeeper must answer in damages for the loss or injury of all goods, money, and baggage of his guest brought within his inn and delivered into his charge and custody, according to the usage of travelers and innkeepers. . . . The circumstances which excuse the innkeeper and relieve him from liability are few in number, and likewise well understood.    He may show that the loss was attributable to the personal negligence of the guest himself, or occasioned by inevitable casualty or by superior force.    He is not liable if it was caused by the act of God or the public enemy, or by the conduct of the guest, or by the acts or misconduct of his servants or of the companions whom he brought with him. Beyond these the common law admits no excuse and affords no immunity to the innkeeper for the loss of goods happening to a guest within his inn, so long as the guest is a sojourner merely, abiding in and using and occupying the inn as a place of rest and for lodging and entertainment."    Pages 126, 127.

Bearing this common-law rule in mind, let us see if the legislature has in any manner abrogated or limited the liability of the innkeeper for any loss occasioned through the theft or gross negligence of himself or his servants.    The first legislation upon the subject was the enactment of ch. 318, Laws 1864, which read:

"Section 1.    No innkeeper in this state, who shall constantly have in his inn an iron safe in good order, and suitable for the safe custody of money, jewelry and articles of gold or silver manufacture, and of the like, and who shall keep a copy of this act printed by itself, in large, plain English type, and framed, constantly and conspicuously suspended in the office, bar-room, saloon, reading, sitting and parlor room of his inn, and also a copy printed by itself in

ordinary size, plain English type, posted upon the inside of the entrance door of every public sleeping room of his inn, shall be liable for the loss of any such articles aforesaid, suffered by any guest, unless such guest shall have first offered to deliver such property lost by him to such innkeeper for custody in such iron safe, and such innkeeper shall have refused or omitted to take it and deposit it in such safe for its custody, and give such guest a receipt therefor.

"Section 2. No innkeeper in this state shall be liable for the loss of any baggage or other property of a guest, caused by fire, not intentional, produced by the innkeeper or any of his servants; but any innkeeper shall be liable for any loss of any guest in his inn, caused by theft or gross negligence of the innkeeper, or any of his servants, anything to the contrary thereof in this act notwithstanding."

It will be seen that this act expressly declared the innkeeper's liability for loss caused by theft or gross negligence of himself or his servants. This act was incorporated into the statutes of 1878 without verbal change except that the words "anything to the contrary thereof in this act notwithstanding" were omitted, presumably because they added nothing to the act as passed in 1864 and because they did not harmonize with the statutory scheme of 1878, in which secs. 1 and 2 of the act of 1864 appeared as secs. 1725 and 1726 respectively. The words omitted, if incorporated, would refer to the sections as a separate "act." This would be confusing and would add nothing to the declaration that the innkeeper should be liable for any loss caused by the theft or gross negligence of himself or his servants. So we see that nothing was contained in the revision of 1878 to relieve the innkeeper from such a loss as we are considering. No change occurred in the statute law from 1864 until 1913, when secs. 1725 and 1726 of the statutes of 1878 were amended and a new section, numbered 1725a, was added. The enactment of 1913 (ch. 479) was as follows:

"Section 1. Sections 1725 and 1726 of the statutes are amended to read: Section 1725. No innkeeper or hotel

keeper, whether individual, partnership or corporation, who shall constantly have in his inn, or hotel an iron safe or vault in good order and suitable for the safe custody of money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, negotiable or valuable papers and bullion and who keeps on the doors of the sleeping rooms used by guests suitable locks or bolts, and who shall keep a copy of this and the next succeeding section printed together in large, plain English type and framed, constantly and conspicuously suspended and posted in the office, and in five other conspicuous places in his inn or hotel, and also a copy printed together in ordinary size, plain English type, posted in a conspicuous place in each public sleeping room of his inn or hotel, shall be liable for the loss of any such articles aforesaid suffered by any guest unless such guest shall have first offered to deliver such property lost by him to such innkeeper or hotel keeper for custody in such iron safe or vault and such innkeeper or hotel keeper shall have refused or omitted to take it and deposit it in such safe or vault for its custody and give such guest a receipt therefor; provided, however, that the keeper of any inn or hotel shall not be obliged to receive from any one guest for deposit in such safe or vault any property hereinbefore described exceeding a total value of three hundred dollars, and shall not be liable for any excess of such property, with the exception that such innkeeper or hotel keeper may, by special arrangement with a guest, receive for deposit in such safe or vault any property upon such terms as may be mutually agreed to in writing, but every innkeeper or hotel keeper, upon production of such receipt and demand by the owner thereof, shall be liable for any loss of the above enumerated articles, the property of a guest in his inn or hotel, after said articles have been accepted for deposit.

"Section 1726. No innkeeper or hotel keeper shall be liable for the loss of any baggage or other property of his guest caused by fire, not intentional, produced by the innkeeper, hotel keeper or any of his servants; but every innkeeper or hotel keeper shall be liable for any loss of any baggage or other property of any guest in his inn or hotel caused by theft or gross negligence of such innkeeper, hotel keeper or any of his servants; provided, however, that in no case

shall such liability exceed the sum of two hundred dollars for each trunk and its contents, seventy-five dollars for each valise and its contents, and ten dollars for each box, bundle, or package and contents, so placed under his care, and all other miscellaneous effects including wearing apparel and personal belongings, fifty dollars, unless he shall have consented in writing with such guest to assume a greater liability. And provided further, whenever any person shall suffer his baggage or property to remain in any inn or hotel, after leaving the same as a guest, and after the relation of innkeeper and guest between such guest and the proprietor of such inn or hotel has ceased, or shall forward the same to such inn or hotel before becoming a guest thereof and the same shall be received into such inn or hotel, such innkeeper or hotel keeper shall hold such baggage or property at the risk of such owner.

"Section 2. There is added to the statutes a new section to read: Section 1725a. It shall be the duty of every guest and of every one intending to be a guest of any hotel in this state, upon delivering to the proprietor of such hotel, or to his servants, any baggage or other articles of property of such guests for safe keeping (elsewhere than to the room assigned to such guest), to demand, and of such hotel proprietor to give, a check or receipt therefor in such case, to evidence the fact of such delivery; and no hotel proprietor shall be liable for the loss of or injury to such baggage or other articles of property of his guest, unless the same shall have been actually delivered by such guest to such hotel proprietor or his servants for safe keeping, or unless such loss or injury shall have occurred through the negligence of such hotel proprietor, or by his servants or employees in such hotel."

It will be seen that the law of 1913 retained the declaration of the innkeeper's liability for any loss caused by the theft or gross negligence of himself or his servants, with the proviso that as to a certain class of goods therein mentioned the maximum amount of liability was limited as therein specified.

It is also significant that in the enactment of sec. 1725a, dealing with ordinary goods delivered to the innkeeper for

safe keeping elsewhere than in the room assigned to the guest, the liability of the innkeeper is asserted if the loss or injury occurs through his negligence or that of his employees. It will thus be seen that in every enactment the legislature has *ex industria* preserved the liability of the innkeeper for any loss caused by the gross negligence of himself or his servants.

The defendant, however, contends that, since the property in question was delivered to the cashier in a chamois bag, his liability is limited by sec. 1726 as amended in 1913 to $10; that it comes under the provision, "ten dollars for each box, bundle, or package and contents, so placed under his care." We think not. It is evident that the legislature in the re-enactment of secs. 1725 and 1726 in 1913 dealt with two distinct and separate classes of property. Sec. 1725 is limited to "money, jewelry, articles of gold or silver manufacture," while sec. 1726 deals with "baggage or other property of his guest" presumably kept in the room assigned to the guest, and sec. 1725a deals with a like class of property kept elsewhere than in the room assigned to the guest. Sec. 1725 is limited to property whose bulk is small compared with its value; such property as is usually placed in safes for safe keeping and is suitable for being so kept. It never was the legislative intent to limit an innkeeper's liability to $10 for the contents of a package of goods described in sec. 1725. For the loss of such a package caused by the gross negligence of himself or his servants the value thereof is the true measure of damages. The circuit court therefore erred in limiting defendant's liability to $300, the amount provided for in sec. 1725 in certain contingencies where the loss occurs without any negligence of the innkeeper or of his servants. He should have rendered judgment for the full value of the property lost as established by competent evidence.

This brings us to the question of the value of the ruby ring found by the jury to be $2,500. Counsel for defendant urge the setting aside of this finding because not supported

by competent evidence. Their argument in that behalf is persuasive and finds considerable support in the record. It appears that the ring was given to plaintiff some eighteen years ago by a wealthy doctor friend, forty years of age, who had traveled abroad quite extensively just before she received it, and whom she characterizes as not being an imitation man nor a man dealing in imitations. She had worn the ring constantly since she received it and the setting and stones showed no signs of wear or flaws. Plaintiff is a resident of New York and has been an actress for over twenty years. She has owned considerable jewelry, all of which is genuine as far as she can tell. The stone in the ring in question was known as a pigeon-blood ruby of about three and one-half carats weight, surrounded by twelve diamonds of about one-eighth carat each and by eighteen diamonds of about one-sixteenth carat each, all the stones being flawless and of fine quality. Assuming the ring to be as described by plaintiff, experts testified that it was worth from $1,200 to $5,000; that it was very difficult to judge the value from description no matter how accurate; and that no expert could swear to the genuineness of stones nor to their exact quality from description merely. Plaintiff said she could not swear that the ruby was genuine, but believed it to be so; that she was not an expert on precious stones, and that it was impossible for her to accurately describe the color of the stone. The ring had never been exhibited to a jeweler for repairs or appraisal and the donor of it was dead, so that it was impossible to produce more satisfactory evidence as to its genuineness or quality. The best evidence which, under the circumstances, could be produced was presented. Plaintiff was in no wise responsible for the unfortunate position in which she was placed; and the defendant, though negligent, was not so culpable as to merit punishment by invoking against it the presumption that the stolen article was genuine and of the highest value, as was done in the case of *Armory v. Delamirie,*

1 Strange, 504, called to our attention. The indefinite nature of plaintiff's evidence as to value arose from necessity, not from choice. No one can read her testimony without coming to the conclusion that she aimed to be truthful. She had worn the ring for over eighteen years and was able to describe it and the setting in detail. It had been admired by her friends as a pigeon-blood ruby ring and was assumed by all who saw it to be a real ruby. That a wealthy New York doctor, forty years of age, should give a genuine valuable ring to a budding young actress is not beyond reasonable belief. We conclude, therefore, without indulging in any presumption against the defendant, that the evidence produced was, under the circumstances, sufficiently definite and satisfactory to form the basis of a finding as to value, and that the jury's finding in respect thereto should not be disturbed.

It results that the judgment must be modified by striking out the sum of $328.50 damages and interest assessed by the court and inserting in lieu thereof the sum of $3,925 and interest thereon at six per cent. per annum from December 19, 1915, to July 20, 1917, the date of entry of the judgment, and as so modified the judgment is affirmed, with costs in favor of plaintiff.

*By the Court.*—Ordered accordingly.

A motion for a rehearing was denied, with $25 costs, on December 4, 1917.