In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1766

H.K. Mallak, Inc.,

Plaintiff-Appellant,

v.

Fairfield FMC Corp.,

Defendant-Appellee.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 96-C-1207--Lynn Adelman, Judge.


Argued November 16, 1999--Decided April 11, 2000


   Before Eschbach, Coffey, and Diane P. Wood, Circuit
Judges.

   Diane P. Wood, Circuit Judge.  This diversity case
requires us to construe a Wisconsin statute
designed to protect what the common law quaintly
called "innkeepers"--today's hotels and motels--
from potentially astronomical liability for theft
of property stored by guests in their rooms. The
thieves here were either exceptionally lucky or
they knew only too well who their target was. As
he stepped into his room for the first time, with
more than $1 million in diamonds wrapped around
his body, salesman Eshagh Kashimallak was
assaulted by masked men and stripped of his
valuable inventory. Kashimallak and his employer,
H.K. Mallak, Inc. ("Mallak") sued Fairfield FMC
Corp., the owner of the hotel, seeking
respectively damages for personal injuries and
property loss. The district court granted summary
judgment for Fairfield on Mallak's property
claim, and, after oral argument in this court,
entered a judgment dismissing Kashimallak's claim
with prejudice. Only Mallak has appealed. The
narrow question now before us is whether the
Wisconsin statute on which the district court
relied unequivocally bars Mallak's right to
recover. We conclude that it does not, and we
therefore reverse and remand for further
proceedings.

   The underlying facts, which we recount in the

light most favorable to Mallak, do not involve much more than what we have already described. Kashimallak was a salesperson for Mallak, a wholesale jewelry business incorporated in New York, with its principal place of business in that state. Kashimallak is also a citizen of New York. Kashimallak covered a wide geographical area for Mallak, including the state of Wisconsin. On August 23, 1995, he checked into the Fairfield Inn in Brookfield, Wisconsin, which was managed and operated by defendant Fairfield FMC Corp. (a Delaware corporation with its principal place of business in Maryland). This was not his first visit to that Fairfield Inn; he had stayed there seven or eight times previously on earlier business trips to Wisconsin.

The Fairfield Inn at Brookfield does not assign a room number to a guest with a reservation until he or she checks in at the front desk. At that time, the guest signs the reservation card, the clerk hands the guest a plastic key card (known as a "ving" card) that opens the security door to both the floor and the guest's room. It took only two or three minutes for Kashimallak to complete this process when he arrived on August 23. He received his key card and was assigned to room 334. Unbeknownst to Kashimallak, however, there were two peculiarities about room 334 that affected its security. First, four days before his arrival, the hotel had re-keyed room 334 (a step it did not ordinarily take between guests) in order to prevent a guest who had been evicted from the room from re-entering it. At that point, room 334 had three new key cards, the standard number for all rooms at the hotel. Three other guests may have used the room between the re-keying and Kashimallak's arrival. But by the time Kashimallak checked in, only two key cards to room 334 remained and the third was missing. No one told Kashimallak about the missing key when he checked in, or the fact that the holder of the missing key would have access to his room.

After he checked in, Kashimallak went directly to his room, carrying two bags. One bag contained his personal effects and the other contained jewelry. He also was carrying jewelry in a special vest and a "money belt" hidden under his shirt. He took the elevator to the third floor, where his room was located, seeing no one either on the elevator or in the hall as he walked to his room. Between the elevator and his room, he had to use his key card twice: once to pass through the locked security door for the floor, and once to get into room 334 itself. Once he had the door open, Kashimallak went into the room, closed the door behind him, secured the chain lock, turned around, and took one step. Two masked men attacked him violently, punching him

in the head, threatening him with a gun, and robbing him of the jewelry in the bag, the vest, and the money belt. The attackers stole more than $1 million in loose diamonds, bracelets, necklaces, pendants, earrings, and solitaire diamonds. Neither the attackers nor the stolen property was ever found; thus, at this point no one knows whether the assaulters were ordinary thieves who had crept into the hotel undetected and were lucky enough to choose Kashimallak as their intended victim, hotel employees doing an inside job, or people who knew Kashimallak's business and who had managed to reach room 334 just before he did.

Mallak and Kashimallak filed suit against Fairfield in the United States District Court for the Eastern District of New York, seeking damages for Mallak's property loss and Kashimallak's personal injuries. Later, the case was transferred under 28 U.S.C. sec. 1404(a) to the Eastern District of Wisconsin. That court granted Fairfield's motion for summary judgment on Mallak's claim on January 21, 1999, finding that the Wisconsin Hotelkeeper's Liability statute, Wis. Stats. sec. 254.80, barred the property claim as a matter of law. Initially, the parties stipulated that Kashimallak's claim would be dismissed without prejudice and without costs, and that the statute of limitations on that claim would be tolled until the expiration of the final appeal period for Mallak's claim. This court pointed out to the parties at oral argument that this disposition in substance did not dispose of all claims of all parties, as required by 28 U.S.C. sec. 1291 and our decisions in JTC Petroleum Co. v. Piasa Motor Fuels, Inc., 190 F.3d 775 (7th Cir. 1999), and Continental Casualty Co. v. Anderson Excavating & Wrecking Co., 189 F.3d 512 (7th Cir. 1999). Although we ordered supplemental briefing on the jurisdictional issue, the parties responded by returning to the district court, which promptly entered an order on November 18, 1999, dismissing Kashimallak's personal injury claim with prejudice and without costs. As in JTC Petroleum, this modification has now eliminated the bar to our jurisdiction, and we can proceed to decide the merits of Mallak's appeal.

The Wisconsin Hotelkeeper's Liability statute provides that a hotelkeeper who fulfills certain obligations will not be held liable for a guest's loss of jewelry, precious metals, or gemstones. The relevant section reads as follows:

(1) A hotelkeeper who complies with sub. (2) is not liable to a guest for loss of money, jewelry, precious metals or stones, personal ornaments or valuable papers which are not offered for

safekeeping.

(2) To secure exemption from liability the hotelkeeper shall do all of the following:

(a)  Have doors on sleeping rooms equipped with locks or bolts.

(b)  Offer, by notice printed in large plain English type and kept conspicuously posted in each sleeping room, to receive valuable articles for safekeeping, and explain in the notice that the hotel is not liable for loss unless articles are tendered for safekeeping.

(c)  Keep a safe or vault suitable for keeping the  articles and receive them for safekeeping when tendered by a guest, except as provided in sub. (3).

(3) A hotelkeeper is liable for loss of articles accepted for safekeeping up to $300. The hotelkeeper need not receive for safekeeping property over $300 in value. This subsection may be varied by written agreement between the parties.

Wis. Stats. sec. 254.80. Also relevant is another section of the Wisconsin Hotelkeeper's Liability Act, Wis. Stats. sec. 254.81, which addresses the hotelkeeper's duties once property is tendered to it:

Every guest and intended guest of any hotel upon delivering to the hotelkeeper any baggage or other property for safekeeping, elsewhere than in the room assigned to the guest, shall demand and the hotelkeeper shall give a check or receipt, to evidence the delivery. No hotelkeeper shall be liable for the loss of or injury to the baggage or other property of a hotel guest, unless it was delivered to the hotelkeeper for safekeeping or unless the loss or injury occurred through the negligence of the hotelkeeper.

   The district court concluded that sec. 254.80 operated to protect Fairfield from Mallak's suit. In its proposed findings of fact, submitted under Local Rule 6.05, Fairfield had stated that the Brookfield hotel complied with all of the requirements of sec. 254.80(2). Mallak did not object to that proposed finding, and the district court accordingly took it as uncontested. Mallak also admitted that Kashimallak had not tendered his valuables to the hotel for safekeeping. It argued instead that the posted notice provisions of sec. 254.80(2)(b) did not control, because there was no notice displayed at the registration desk that a new guest could see while checking in. Furthermore, it asserts, Kashimallak was not

informed verbally of the tender requirement, and he was assaulted before he ever had the chance to see the notice posted on the back of the bathroom door inside the room. In making this argument, Mallak did not refer to sec. 254.81, but the district court commented in its order granting summary judgment that sec. 254.81 conceivably might afford Mallak a theory of relief, but that it had waived the point. The court specifically noted that there would be a contested issue of material fact over Fairfield's negligence, because it did not re-key room 334 when it discovered that one of the three key cards was missing. H.K. Mallak, Inc. v. Fairfield FMC Corp., 33 F. Supp. 2d 748, 754 (E.D. Wis. 1999).

We agree with the district court that Mallak has waived its chance at this stage to rely on sec. 254.81, through its failure to argue the point before the district court. The court's mention of the law in its opinion is not a substitute for a party's proper presentation of the point. The opposing side is entitled to an opportunity to argue the contrary, which would be missing were we to find that the court's awareness of the law is sufficient. We also find no fault in the district court's decision to hold Mallak to its acquiescence in the Rule 6.05 submission, which amounted to an admission that Fairfield had satisfied the three hotelkeeper duties outlined in sec. 254.80(2). We have repeatedly held that district courts are entitled to insist on compliance with local rules designed to make the summary judgment process operate more smoothly, and there is nothing in this case that warrants an exception to that principle. See, e.g., Markham v. White, 172 F.3d 486, 491 (7th Cir. 1999); Bradley v. Work, 154 F.3d 704, 707-08 (7th Cir. 1998); Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994).

These omissions by Mallak may have been perfectly reasonable, at least as to the facts, despite Mallak's efforts before this court to stuff that genie back into the bottle. At this point, they have the effect of distilling the issue before us into the following: does sec. 254.80, which sets forth security measures Wisconsin hotels must take in order to limit their liability for lost jewelry (among other things) and establishes in part a notice-based regime, apply to a case in which the guest did not and (in the light most favorable to him) could not have received the required notice? This was the central theory on which Mallak relied before the district court, and so it is properly before us.

There is a dearth of caselaw in Wisconsin construing sec. 254.80, and so, as a federal

court sitting in diversity, we must do a certain amount of tea-leaf reading to decide whether Wisconsin law supports Mallak's right to recover on this record. The parties agree that the leading decision is the 82-year old ruling in Busley v. Hotel Wisconsin Realty Co., 164 N.W. 826 (Wis. 1917), which construed the predecessor to sec. 254.80. In Busley, as here, the parties had stipulated that the innkeeper had complied with the applicable statutory notice requirements. An additional stipulation provided that the loss in question occurred either through the theft or the gross negligence of the innkeeper's servants. The court thus had only to consider what was the extent of the innkeeper's liability for the loss of property delivered to him, when that loss occurred without any negligence on his part.

The court held that the statute did not eliminate the innkeeper's liability for loss caused by the theft or gross negligence of himself or his servants, although sec. 1726 of the statute in question limited liability to $10 for packages placed under the care of the cashier under the predecessor to sec. 254.81, sec. 1725a. The innkeeper argued that the $10 limitation of liability applied to the loss of money and jewelry, but the court disagreed. Noting that sec. 1725, the predecessor to sec. 254.80, was limited to "money, jewelry and articles of gold or silver manufacture," the court stated that "[i]t never was the legislative intent to limit an innkeeper's liability to $10 for the contents of a package of goods described in section 1725. For the loss of such a package, caused by the gross negligence of himself or his servants, the value thereof is the true measure of damages." 164 N.W. at 828.

Busley therefore indicates that, at a minimum, the notice and delivery provisions of the predecessors to sec. 254.80 do not suffice to protect an innkeeper from liability for its own gross negligence or that of its employees. This rule appears to be consistent with the general understanding in the area, although we repeat that there are not many cases to consult. The following decisions, however, all indicate in one way or the other that the statutory limitations found in laws like Wisconsin's (a) do not relieve the hotelkeeper from liability based on acts of its own employees, and (b) merely modify the duty of insurer that the common law otherwise imposed on innkeepers, replacing it with a negligence regime. See, e.g., Shifflette v. Lilly, 43 S.E.2d 289, 293-94 (W. Va. 1947) (holding that a similar statute requiring the deposit of jewelry in the office and the posting of notices did not relieve the innkeeper of the general duty to exercise due

care in providing honest servants and to take reasonable precautions to protect the person and property of guests); Rockhill v. Congress Hotel Co., 86 N.E. 740, 741-42 (Ill. 1908) (Illinois statute did not apply to case involving theft of handbag containing valuables and jewelry, where the loss occurred by the negligence of the porter or servants of the hotel); Shamrock Hilton Hotel v. Caranas, 488 S.W.2d 151, 153 (Tex. Civ. App. 1972) (statute limiting hotel liability did not apply to case alleging that loss occurred through the negligence of the hotel); Kutbi v. Thunderlion Enterprises, Inc., 698 P.2d 1044, 1048 (Or. App. 1985) (summary judgment improper in case where plaintiff alleged negligence and gross negligence, including through knowledge of lost master key for area where plaintiff was staying and through loss of key, where jewelry was stolen from room; innkeepers' law only modified common law rule of strict liability).

In a case dealing with the check-out process, rather than the check-in process, a New York appellate court found that the hotel was not entitled to summary judgment where a departing guest's tote bag, containing jewelry and other valuables, was snatched away from her while she sat in a livery cab in the hotel's driveway. See Penchas v. Hilton Hotels Corp., 603 N.Y.S.2d 48 (App. Div. 1993). Under those circumstances, notwithstanding the hotelkeepers' liability laws, the hotel continued to have a duty to exercise reasonable care to protect its guests from injury at the hands of third persons who were not hotel employees, and to protect them from the criminal acts of third parties. Id. at 49-50. In our view, in light of the cases mentioned above, we think it likely that a Wisconsin court would follow a similar rule for a guest who was subjected to a criminal act during the process of checking in. Just as the provisions for notice and a safe are no longer useful for a guest who has checked out, they cannot help a guest who has not even penetrated the interior of his room and had a chance to use them. Even if that prediction about Wisconsin law is wrong, however, and Wisconsin gives absolute protection to hotels that have the proper notices posted in the rooms no matter where or when the crime occurs, we are confident that Wisconsin would not extend the protection of the statute to the case of an inside job, as this may have been. We have not found a single jurisdiction that would go so far, and there is no reason to think that Wisconsin would become such an outlier.

Before concluding, we add a word about a potentially important aspect of the case that is not before us. In its motions for summary judgment before the district court, Fairfield

also argued that it owed no duty to Mallak or Kashimallak to prevent harm from unforeseeable criminal activity by a third party. It has not pursued that argument on appeal as an alternate ground in support of the district court's judgment. Furthermore, Fairfield does not appear ever to have challenged Mallak's right to complain about the theft from Kashimallak. We express no opinion at this point either on the question whether Fairfield has therefore waived its right to introduce that question into the suit on remand, or what the correct answer should be if the issue is properly in the case. We conclude only that the district court erred in granting summary judgment for Fairfield FMC Corp., and the judgment is REVERSED and REMANDED for further proceedings.